IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

FILED BY _____ D.C.

JUN 13 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

| | |
|---|---|
| **JOHNNY RAY WILLIAMS**<br><br>Plaintiff,<br><br>v.<br><br>**AKIMA GLOBAL SERVICES,** and **MICHELLE JONES**, Project Manager in her individual capacity,<br><br>**IMMIGRATIONS and CUSTOMS ENFORCEMENT**, and **LIANA CASTANO** Acting Director in Charge in her individual capacity<br><br>**NATIONAL UNION OF SECURITY OFFICERS AND GUARDS,** and **PETE PACHECO,** Vice President in his individual capacity<br><br>**NATIONAL LABOR RELATIONS BOARD,** and **SUSY KUCERA,** Attorney in her individual capacity,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>Breach of Contract<br>41 U.S.C. § 6503<br><br>420 U.S 251 (1975)<br><br>5 U.S.C Code 2302<br><br>Violation of 14th Amendment US Constitution<br><br>Section 242 of Title 18<br><br>Title 18 U.S.C. Section 1001 |

PLAINTIFF, appearing *pro se*, bring this COMPLAINT against Defendant and alleges as follows:

1.

**JURISDICTION:** This Court has original jurisdiction of the federal claim contained in this Complaint pursuant to 28 USC 1331. Jurisdiction is proper in this court because this complaint occurred in Miami-Dade County.

2.

On January 28, 2009, Plaintiff Williams became a Contract detention officer under Doyon Security Services with U.S. Immigration & Custom Enforcement at Krome Detention Center in

**COMPLAINT**, page 1 of 11

Miami. In April 2015 the U.S. Government awarded Defendant (AGS) the contract to recruit detention officers to supervise detainees at Krome. Plaintiff Williams received an offer letter and was recruited by Defendant Akima Global Security Services and remained a detention officer with Immigration.

3.

(ICE) has a zero-tolerance policy for detainees in possession of contraband at Krome. Officers face discipline and or termination for failing to recognize and confiscate contraband during a pat search. On March 09, 2020, Plaintiff Williams began his 11th annual refresher training for immigration detention at Krome. There were about 15 officers in the class. Every morning all male officers in the class assist officers on the rec-yard pat search detainees returning from recreation. On March 12, 2020, approximately 9: 45 AM, Plaintiff was involved in an incident about a detainee in possession of contraband. While assisting rec-yard officers pat search detainees returning from the rec-yard, Plaintiff was approached by a black male detainee for a pat search wearing long dreadlocks. Plaintiff notice a light blue rubber band in his hair. He tore the wrist part of a rubber glove to make a rubber band to hold his dreadlocks in a ponytail. The rubber gloves are Government property. The gloves are issued to detainees during schedule cleaning hours. When cleaning is complete, they must trash the gloves. The detainee walked past several officers from the rec-yard before reaching the pat search officer. Officers are posted at the rec-yard gate to watch for and confiscate contraband from detainees as they exit the rec-yard. As the detainee stood before Plaintiff for a pat search, Plaintiff instructed the detainee to remove and discard the rubber ban. Detainee replied, "when I get inside of the building".

4.

The detainee refused to comply to several verbal commands issued by the plaintiff to get rid of the rubber band. Finally, the detainee walked away to Officer Stanly Marcel, Shop Steward for the Union, to complete the pat search. Officer Marcel witnessed the detainee's refusal to comply with a fellow officer. Officer Marcel began laughing as he accepted the detainee and said to the Plaintiff, " its ok Williams, I got him". Marcel offered no support with a detainee openly refusing to obey a fellow officer. He offered no corrective action to the detainee's noncompliant to (ICE) policy on contraband.

5.

Lieutenant A. Rodriguez supervised the pat search. He observed the detainee with the contraband and heard the Plaintiff's instructions to the detainee to discard the contraband. Lt. Rodriguez witnessed the detainee's bold defiance and refusal to obey an officer but did not

**COMPLAINT**, page 2 of 11

intervene or say anything to the detainee. Plaintiff approached the detainee to speak with him about his responses. Plaintiff began to speak to the detainee, Senior Officer Cannon suddenly rushed over and forcefully pushed the Plaintiff out of range from speaking with the detainee. The Plaintiff felt assaulted and battered by officer Cannon. The Plaintiff chose to refrain from putting up a resistance struggle with officer Cannon and allowed Plaintiff to be manhandle due to the detainees presence. When Officer Cannon released the Plaintiff, the plaintiff requested never to be handled like that again.

The Plaintiff made another attempt to speak to the detainee about complying with officers when instructed, but to no avail. Lieutenant Rodriguez instructed the Plaintiff to continue with the pat search. After the pat search was completed, everyone returned to the classroom and were ordered to write memos about the incident. Within the hour, the Defendant's investigators arrived to interview the officers that was present during the incident. The incident was capture on video and viewed by Defendant (ICE), Defendant (AGS) Project Manager Michelle Jones and members of her staff.

6.

The following day, March 13, 2020, while in an annual refresher certification class, Plaintiff was advised by Lieutenant A. Rodriquez to go to Defendant Jones's office. As instructed, Plaintiff left the refresher class to attend a private meeting to Defendant Jones' office at 3:50 p.m., minutes before class ended. Upon arrival Plaintiff was informed by Defendant Jones, "effective immediately, I'm placing you on administrative leave pending investigation". Defendant Jones confiscated Plaintiff's facility access I.D. and called an administrative staff to escort the Plaintiff off the property. Without privilege to have consulted with a union rep nor having knowledge of the intent of the meeting, Defendant Jones arbitrarily administered a disciplinary action without a union representative or shop steward present which violated the Weingarten Rights 420 U.S 251 (1975). Defendant Jones did not articulate a reason for the Plaintiff's suspension nor provided charges regarding the incident. The Plaintiff was suspended with no prior warning nor a written reprimand. Plaintiff was called to a meeting without consulting

7.

Per CBA, SECTION 6.4 ADMINISTRATIVE LEAVE The Company has the right to place individuals on administrative leave without pay during a company conducted investigation. If the Employee is cleared during the investigation the Employee will be reinstated and the company will compensate the Employee with back pay for lost time. SECTION 6.1 Disciplinary action will

**COMPLAINT**, page 3 of 11

consist of a verbal warning, a written warning and suspension or termination. 6.3 Any time an employee is to be interviewed and disciplinary action may be taken, he/she may have a Shop Steward or Union Representative present. Both the employee and Union Representative are entitled to know what the meeting is about and are entitled to consult prior to the interview.

8.

Plaintiff was suspended and escorted off the property and deprived of the opportunity to consult with the Union Representative before the meeting of the suspension. SECTION 5. 1 INTENT the grievance procedure outlined herein shall not be used for any action or order of removal of an employee from working under the contract by the U.S. Government or revocation of required credential by ICE. SECTION 6.1 After probation period no employee shall be Suspended or Discharged without just cause. Just cause shall Include any action or order of removal of an employee from working under the contract by the U.S. Government or revocation of clearance by the U.S. Government, or loss of license required by the State of Florida. In addition, the grievance procedure outlined herein shall not apply to any situation where the company is acting under the express directives of the U.S. Government or the State of Florida.

9.

Plaintiff was suspended before giving the opportunity to rebuttal any disciplinarily actions. SECTION 5.3 B. Grievance for Discipline. Any Grievance involving discharge or other discipline maybe commenced using this procedure. Disciplinarily charges must be served on the employee no later than (30) days after the alleged misconduct. Plaintiff was never served a charge only the termination letter. Upon written request the company will provide the Union, in a timely manner, with all information concerning the removal that they may legally release and will provide the Union with any relevant information concerning the proper Government point of contact and their contact data.

10.

March 16, 2020, Plaintiff called the Union regarding his suspension. Plaintiff received no answer. Plaintiff left a voice message for Defendant Mr. Pacheco, Vice-President of the Union, to return the call. Plaintiff called several times to no avail. Plaintiff eventually received a call from Defendant Pacheco and explained the incident and added that he was placed on administrative leave. He responded, "somebody f---- up!" He then said, "let me call Jones and find out what's going on and I will get back with you". Plaintiff waited for Defendant Pacheco to call back. After waiting a few days, Plaintiff made several unanswered calls to Defendant Pacheco. Finally, Plaintiff talked with Defendant Pacheco on March 27, 2020. Plaintiff called for an update on the

investigation and his return to work. Defendant Pacheco informed Plaintiff that Defendant Jones was on vacation and there was nothing he could do until she returns. The union allowed this time to go by, holding the authority and the judgement of the Plaintiff's fate in the hands of Defendant Jones. Plaintiff's faith in the Union was uncertain by the indication of a lack of representation. Plaintiff called Defendant Pacheco many times after March 27, who never answered or return the Plaintiff's calls.

11.

Friday, April 17, 2020, 5 weeks later, Plaintiff received a conference call from Defendant AGS Project Manager, Michelle Jones, and H.R. Director Karen Sinanan. Plaintiff was informed by Defendant Jones that the outcome of the investigation had determined a decision to be separated from the company. Again, no just cause was provided for the termination. Plaintiff called Defendant Pacheco Monday April 20, 2020, seeking help and to inform him about the Plaintiff's termination. Defendant Pacheco never answered my calls and the Plaintiff never heard from him again. The Plaintiff received a FedEx package delivered Next Day Air, dated April 23, 2020. The package contained a letter of termination. The letter "did not" indicate the reason of separation **(See Attached Letter A).** Plaintiff emailed Defendant Jones requesting the reason for the termination. The replied email received from AGS, Karen Sinanan, with cc to Defendant Jones, stated that the investigation determined that Plaintiff acted in an unprofessional and unauthorized manner towards the subject detainee and other employees on March 12th, 2020 **(See Attached Letter B).** To substantiate confusion, the contradictions are -The first letter stated that Plaintiff was terminated with no explanation given – the Second letter stated that Plaintiff's conduct was unprofessional- and thirdly, Defendant Pacheco claimed that Plaintiff voluntarily quit.

12.

By terminating the Plaintiff's employment, the actions of Defendants AGS, ICE, NLRB, and the Union, constituted a breach of Contract and deprivation of the Plaintiff's 14th Amendment Constitutional Rights of due process. Plaintiff contacted the NLRB to file a complaint against the Defendant Pacheco for failure of Union representation. Defendant (NLRB) Senior Field Attorney Susy Kucera was assigned to the case. At the start of the investigation, Defendant Kucera called the Plaintiff regarding a conversation she had with Defendant Pete Pacheco. Defendant Attorney Kucera was informed by Defendant Pacheco that Plaintiff called him on March 16, 2020, and talked approximately ten minutes. Defendant Pacheco claimed that Plaintiff confessed that Plaintiff voluntarily quit his job. Plaintiff never told Defendant Pacheco that he voluntarily quit his job. Making false statements or lying to an agency of the federal government during an

investigation is condemned under the United States Constitution Title 18 SEC 1001.

13.

The Plaintiff was proud to be a Detention Officer with Immigration and Customs. Becoming a Detention officer with Immigration and Customs was a great accomplishment and a job he took very seriously. Working as a Detention officer with Immigrations over 11 years and earned $30.49 an hour, a 401k, health Insurance benefits was a dream job. Also, the Plaintiff loved working with the detainees. In addition, the Plaintiff have a thirteen-year-old daughter with special needs, born with hydrocephalus, fluid buildup in the ventricles of her brain. She endured brain surgery at 12 months of age and will require monitoring and medical attention the rest of her life. The Health Insurance the job provided was vital to the Plaintiff's daughter's health care. With the Plaintiff's daughter and other financial obligations, under no circumstance would he voluntarily quit his job. Plaintiff received an insurance cancellation letter from CBIZ Government Contractual insurance agency dated 05/07/2020 that coverage will end on April 30, 2020, due to Voluntary Termination **(See Attached Letter C)**. Akima processed the Plaintiff's health insurance cancellation based on Defendant Pacheco's claim that the Plaintiff voluntarily quit which contradicts the two previous termination letters.

14.

Defendant Pacheco used SECTION 2.6 (1). of the CBA Employee voluntarily quit **to stop an investigation of Defendant AGS Project Manager, Michelle Jones and to protect the Union's failure to act**. Defendant Attorney Kucera maintained the acceptance of Defendant Pacheco's false claim without requiring proof of the statement that the Plaintiff voluntarily quit. Even after exposing detailed content of the phone conversation, the plaintiff had with Defendant Pacheco, Defendant Kucera still requested proof of the phone call made to Defendant Pacheco on March 16th, 2020. She quoted, "if I couldn't find the call, it would be the nail in the coffin". As a client, the Plaintiff was given the burden of proof to produce a phone log instead of giving Defendant Pacheco the burden since he made the claim. Defendant Kucera did not request statements or written memos from officers who witnessed the incident to substantiate the charge. Defendant NLRB Attorney Susy Kucera protected the Union instead of supporting her client. Looking back weeks into the phone log, the Plaintiff could not find proof of the call made on March 16, 2020. During that conversation, Defendant Kucera alluded to dismiss the Plaintiff's charge based on Defendant Pacheco's false claim. The inability to prove the phone call is the insignificant evidence Defendant Attorney Kucera is referring to in her dismissal letter. Defendant Kucera used her position to determine the outcome of the Plaintiff's case. Defendant Kucera's

actions constituted a violation of SECTION 242 Title 18, Deprivation of Rights Under Color of Law rule. She did not represent the Plaintiff's case fairly nor in good faith. With the COVID pandemic slowly affecting the progression of the case, the Plaintiff received a dismissal letter from the National Labor Relations Board dated July 29, 2020, stated: Dear Mr. Williams: We have carefully investigated and considered your charge that National Union of Security Officers & Guards (NUSOG) has violated the National Labor Relations Act. Based on that investigation, I have decided to dismiss your charge because there is insignificant evidence to establish a violation of the Act **(See Attached Letter D)**

15.

A carefully conducted investigation by the Defendant NLRB, would have shown Defendant Jones breached protocol regarding the Plaintiff's suspension. Defendant Jones, showed a reckless disregard for the rule of law, starting with the Plaintiff's suspension with no advance notice and continued to violate the Collective Bargaining Agreement with no regard for the Union. Defendant Jones' decision to suspend the Plaintiff's employment was not the expressed directive of the U.S. Government, nor was her decision based on any of the clauses in SECTION 6.1 that justified that employee is discharged for just cause. It is a mandatory requirement expected of all officers to confiscate contrabands from any noncompliant detainee during a pat search. The Plaintiff's treatment was disproportionate to two other serious allegations of two Hispanic officers who was under investigation for physical and sexual assault against a detainee (PREA). Defendant Jones allowed the two Hispanic Officers to remain on duty with pay while under investigation and was transferred to special assignments in a detainee restricted area. The two Hispanic Officers were cleared of all wrongdoing and remained employed with the company. Plaintiff Williams remained out of work for five weeks with no pay while under investigation and was treated harshly for a far less serious issue. Plaintiff Williams was accused of acting in an unprofessional and an unauthorized manner which resulted in the Plaintiff's termination. Defendant Jones' judgement with respect to the discipline, does not fit the enforced sanction. Defendant Jones should expect all Detention Officers to uphold ICE policies and procedures. Defendant Jones' actions was inappropriate and deprived the Plaintiff of Union Representation during the investigatory interview violating 420 U.S. 251 of the National Labor Relations Act and illegally terminating the Plaintiff's employment. The Plaintiff was deprived of the right to a hearing regarding the alleged misconduct. Defendant Kucera and Defendant Jones claim that their investigations had been carefully conducted. No evidence was found as no witnesses were interviewed, no memos collected, no review of video footage, nor other breaches of the Collective Bargaining Agreement violated by Defendant Jones, ICE or the

Union was reviewed nor considered by Defendant Attorney Susy Kucera. There has been no evidence produced to appropriately discharge the plaintiff's employment nor was there a gradual progression of discipline considered in regards of the Plaintiff's eleven-year tenure with AGS.

16.

**<u>Below is a list of CBA violations by Defendant Jones and violations of Plaintiff's U.S. Constitutional rights by all parties involved.</u>**

**Collective Bargaining Agreement Infractions:**

**SECTION 2.6 TERMINATION OF SENIORITY**

(1). Employee is discharged for just cause.

(2). Employee voluntarily quit.

Defendant Pete Pacheco, Vice President of the National Union of Security officers & Guards used the Collective Bargaining Agreement SECTION 2.6 (2) and lied to Defendant NLRB Attorney, Susy Kucera, that the Plaintiff voluntarily quit his job. Defendant Pacheco invoked the CBA SECTION 2.6 (2) and lied Employee voluntarily quit. Defendant Pacheco lied to a government agency. Defendant NLRB Attorney Susy Kucera, who without proof, accepted his false claim and chose to dismiss the Plaintiff's charge against the Union. Defendant Pacheco used SECTION 2.6 (2) Employee voluntarily quit because SECTION 2.6 (1) Employee is discharged for just cause could not be established. Relevant information regarding this charge must be evaluated and authenticated. **<u>Section 1001 Title 18, is a federal crime to make a materially false, fictitious, fraudulent statement knowingly and willingly in any matter within jurisdiction of the executive, legislative, or judicial branch of the United States.</u>**

17.

**SECTION 5.3 GIRVEANCE PROCEDURE**

A. The Employee or Union Representative shall not later than 10 days after the incident being grieved, set forth the facts in writing specifying the article and paragraph allegedly violated. This shall be signed by the aggrieved employee or Union Representative and shall be submitted to the Project Manager or designee. The Project Manager or designee shall have (10) days from the date the grievance was receive by the Project Manager or designee to return a decision in writing to the aggrieved employee.

**COMPLAINT, page 8 of 11**

B. Grievance for Discipline. Any grievance involving discharge or other discipline may be commence using this procedure. Disciplinarily charges must be served on the employee no later than thirty (30) days after the alleged misconduct.

**Before Plaintiff's suspension was imposed by Defendant Jones, Plaintiff did not receive any written notice of the proposed action that stated the nature of the disciple, nor the policy or rule violated.**

18.

**SECTION 6.1 GROUNDS FOR DISCIPLINE AND DISMISSAL**

Disciplinary action will consist of a verbal warning, a written warning and suspension or termination. The Employer may skip one or more of these steps, depending on the severity of actions causing the disciplinarily action.

After completion of probation, no Employee shall be dismissed or suspended without just cause. Just cause shall include any action or order of removal of an employee from working under the contract by the U.S. Government, or revocation of required credential by ICE.

**SECTION 6.2 GENERAL PROVISIONS FOR DISCIPLINE AND DISMISSAL**

Upon written request, the Company will provide the Union, in a timely manner, with all information concerning the removal that they may legally release and will provide the Union with any relevant information concerning the proper Government point of contact and their contact data. The final decision on the employee's removal shall be determined by the Government, and the Employer shall be held harmless by the Union and the employee for any further claims made after this final determination. This provision is not intended to limit or prohibit the rights of any party to seek relief from other parties.

**SECTION 6.3 MEMBERS RIGHTS**

Any time an employee is to be interviewed and disciplinary action may be taken, he/she may have a Shop Steward or Union Representative present. Both the employee and Union Representative are entitled to know what the meeting is about and are entitled to consult prior to the interview.

**SECTION 6.4 ADMINISTRSTIVE LEAVE**

The Company has the right to place individuals on administrative leave without pay during a company conducted investigation. If the Employee is cleared during the investigation the Employee will be reinstated and the company will compensate the Employee with back pay for lost time.

(1). On March 13th, 2020, Defendant Jones placed Plaintiff on unpaid administrative leave, pending Investigation. After 5 weeks out on unpaid leave, Defendant Jones called Plaintiff cell phone to inform Plaintiff of the outcome of the investigation and that a decision was made to separate Plaintiff from the Company. Defendant Jones did not provide Plaintiff any information regarding the final findings or charge from the investigation.

(2). Despite the investigation's failure to establish Plaintiff misconduct or Company's violation, AGS refused to reinstate Plaintiff or compensate him with back pay for lost time. Plaintiff was terminated on April 17th, 2020, without ever receiving a hearing.

19.

**United States Constitution Violations**
- Breach of Contract 41 U.S.C. § 6503
- The 14th Amendment 1964 Civil Rights Acts Protect due process and equal protection under law
- SECTION 242 of Title 18. Acting under Color of Law
- Title 18 U.S.C. Section 1001 False Statements in violation
- 5 U.S.C. Code § 2302 Prohibited Personnel Practices is a violation of any law rule or regulation in the Federal workplace
- 420 U.S. 251 Weingarten Rights of the National Labor Relations Act

20.

**CLAIM FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

Plaintiff has been denied due process from all parties involved since the day of the suspension March, 13, 2020. The U.S. Constitution Fourteenth Amendment protects due process and equal protection under the Law. Plaintiff is asking the Courts to consider his letter of suit and complaint as the information provided indicates evidence to establish AGS, NUSOG the Union,

ICE and NLRB breached the contract to their oath of office and intentionally violated the Plaintiff's 14th Amendment Civil Rights and other privileges granted by the U.S. Constitution.

21.

As a direct result of Defendants' actions, Plaintiff is asking the Courts to grant restitution from each parties involved, starting March 13th, 2020, in the amount of his final annual salary of 80,000 per year to the present, including all paid holidays, employee mandatory six day over time required by AGS throughout the year to the official age of retirement. Plus, punitive damages as it can be proven. Defendants AGS, ICE and the union knowingly violated Plaintiff's Constitutional rights and without regard breached the Collective Bargaining Agreement. NLRB Attorney Defendant Susy Kucera acted under the Color of law. She used her position to deprive Plaintiff of due process and did not provide Plaintiff equal protection under the law.

**PRAYER FOR RELIEF**

13.

WHEREFORE, Plaintiff requests the following relief:

-A money award judgment entered against each Defendants for 80,000 to the official age of retirement (67)

-A money award for Plaintiff's court costs and disbursements associated with bringing this action to suit.

-Any and all other relief the Court deems just and reasonable under the circumstances.

-Plaintiff is a resident of Miami-Dade County, Florida.

Respectfully submitted on: June 13, 2022

By: *Johnny R. Williams*
Johnny Ray Williams
Plaintiff, pro se
2382 NW 73rd Terrace # 203
Miami, Florida 33147
786-362-1493
johnnyraywilliams@hotmail.com

**COMPLAINT**, page 11 of 11